Michael R. Reese (SBN 206773)
Carlos F. Ramirez (to be admitted *pro hac vice*)
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 646-0500
Facsimile: (212) 253-4272
E-mail: *mreese@reesellp.com*
      *cramirez@reesellp.com*

**REESE LLP**
George V. Granade (State Bar No. 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
E-mail:  *ggranade@reesellp.com*

**RICE REUTHER SULLIVAN & CARROLL, LLP**
Anthony J. DiRaimondo (to be admitted *pro hac vice*)
3800 Howard Hughes Parkway, Suite 1200
Las Vegas, Nevada 89169
Telephone: (702) 732-9099
Facsimile: (702) 732-7110
E-mail: *adiraimondo@rrsc-law.com*

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN WHITE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLUE BUFFALO COMPANY, LTD.<br><br>Defendant. | Case No.: 19-cv-7816<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **Violation of California Civil Code §1750,** *et seq.*<br>2. **Violation of California Business and Professions Code § 17200,** *et seq.*<br>3. **Violation of California Business and Professions Code § 17500,** *et seq.*<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Susan White ("Plaintiff") individually and on behalf of all others similarly situated (the "Class," as defined below), by and through her undersigned counsel, bring this Class Action Complaint against Blue Buffalo Company, Ltd. ("Defendant" or "Blue Buffalo"), and respectfully alleges as follows. Plaintiff bases the allegations herein on personal knowledge as to matters related to, and known to, Plaintiff. As to all other matters, Plaintiff bases the allegations herein on information and belief, through investigation of Plaintiff's counsel. Plaintiff believes substantial evidentiary support exists for the allegations set forth herein, and Plaintiff seeks a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. Grey wolves are the domestic dog's genetic ancestors. Indeed, the two species are so genetically similar that they are capable of interbreeding and shared a common ancestor as recently as 10,000 years ago. Wild wolves consume *little or no dietary carbohydrate* and they do not experience high rates of chronic diseases such as obesity and cancer. In fact, these diseases are *essentially non-existent* in wolf populations.

2. This is a proposed class action against Defendant for marketing and labeling its so-called "Blue Wilderness" line of dog food products ("Products") as healthy, nutritious, and optimal on the basis that they are "[i]nspired by the diet of wolves" and otherwise consistent with dogs' "ancestors in the wild." Defendant's Blue Wilderness packaging prominently displays an image of a grey wolf and promotes these products as "Nature's Evolutionary Diet." Defendant's Blue Wilderness products are more expensive than many other pet foods, but Defendant claims that the extra cost is justified for these health and evolutionary-based diet reasons. But Defendant's claims are deceptive because their Blue Wilderness products all contain *high levels of dietary carbohydrates*, which are neither healthy for dogs nor a meaningful part of the diet of grey wolves.

3. Specifically, dietary carbohydrates are more fattening for dogs than other macronutrients. As such, carbohydrates are the fundamental cause of obesity, a chronic disease with clearly-established links to morbidity in dogs. And while this disease was virtually non-existent among wolf populations, American dogs are currently experiencing an epidemic of obesity, with

CLASS ACTION COMPLAINT

studies suggesting that at least 50% of dogs in the United States are overweight.

4.   Carbohydrate consumption also causes canine blood glucose levels to spike. Unfortunately, glucose is the preferred metabolic fuel of renegade cancer cells. Like obesity, cancer is another chronic disease with clear links to morbidity in dogs. And, just like with obesity, this chronic disease was also virtually non-existent among their wolf ancestors, but domestic dogs in the United States are currently experiencing an epidemic of cancer, with the disease thought to afflict at least 25% of American dogs.

## PARTIES

### Plaintiff Susan White

5.   Plaintiff Susan White is a resident of Belmont, California, and she has no intention of changing her residence.

6.   Plaintiff White is the owner of a ten-year-old German Shepherd named Spike. Based on Defendant's marketing and labeling that represent its product as healthy and consistent with the diet of grey wolves, Plaintiff White purchased for Spike the dog food known as BLUE Wilderness™ High Protein Grain Free – Chicken Recipe.

7.   As a result of consuming Defendant's product as described above, Spike has gained significant weight and now has serious health issues and requires medical attention.

8.   Plaintiff White attempted to switch Spike's dog food to another of Defendant's "Healthy Weight" products; however, the change only exacerbated his weight problem.

9.   In order to address Spike's condition, Plaintiff White's veterinarian has suggested that Spike's diet no longer include Defendant's dog food and he consume a costly prescription product instead.

### Defendant Blue Buffalo

10.   Defendant Blue Buffalo Company, Ltd. is a corporation organized under the laws of Delaware.

11.   Defendant's principal place of business is located in Wilton, Connecticut.

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

### Jurisdiction

12. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 18 U.S.C. § 1332(d), as there is diversity between the parties. This Court has personal jurisdiction over Defendant for reasons including but not limited to the following: Plaintiff White's claims against Defendant arise out of Defendant's conduct within California, including but not limited to the marketing and sale of Defendant's dog food within the State of California. Furthermore, Defendant purposefully avails itself of the privilege of conducting business activities within the territorial boundaries of California, including by marketing, distributing, and delivering its dog food and other products to California, including California residents, thus invoking the benefits and protections of the laws of California, and such activities render it foreseeable that Defendant may be haled into court in this jurisdiction. Thus, Defendant has sufficient minimum contacts with California that maintenance of this action in this Court does not offend traditional notions of fair play and substantial justice.

### Venue

13. Venue is proper in the Northern District of California, as the actions and harms alleged herein occurred, in part, in that judicial district.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

14. Defendant is a leader in the pet food industry, which in the United States alone grossed more than $29 billion in revenue during 2018.

15. Defendant manufactures and markets for sale to the public a number of pet food products for both dogs and cats. Defendant's dog food products include, but are not limited to, certain product lines described by Defendant as "BLUE Wilderness™".

16. Despite Defendant's claims on its packaging that Blue Buffalo foods are "Healthy" and "Holistic," the fact remains that the majority of Defendant's dog food products are dry, "kibble"-style foods produced via extrusion processing, a manufacturing method which typically

requires a high amount of carbohydrate-containing ingredients that are not healthy for dogs.

17. Specifically, extrusion processing is a manufacturing process whereby pet food ingredients are mixed in a mixer, extruded through an extruder barrel, cut into various shapes and sizes, and then dried in an oven, ultimately producing hard, shelf-stable nuggets or "kibbles." Due to the comparatively low costs of carbohydrate-containing ingredients and their functional utility in binding other ingredients together during extrusion processing, among other reasons, Defendant's extruded dog food products are all high in carbohydrate content.

18. For instance, Defendant's Blue Wilderness Chicken recipe dry dog food, which Defendant's packaging touts as "protein-rich," and "High-Protein" is composed of over 25% carbohydrate. *See* https://bluebuffalo.com/natural-dog-food/grain-free-blue-wilderness/dry-food/wilderness-adult-chicken-recipe/ (see tab "Guaranteed Analysis") (last visited Nov. 26, 2019). As such, a small bowl of Defendant's Blue Wilderness Chicken recipe dog food contains more carbohydrate than a wild grey wolf is likely to consume in ***an entire lifetime.***

19. Not only are Defendant's Blue Wilderness products high in carbohydrate content, but the high carbohydrate content of the products is hidden from consumers. Unlike most food products, the carbohydrate content of Defendant's Blue Wilderness dog food product ***is not disclosed*** on any of Defendant's product labels. Instead, Defendant markets and promotes its dog food products by focusing on the non-carbohydrate nutrients found in the products, such as proteins, fats, fiber, vitamins and minerals. Nor is the carbohydrate content disclosed on Defendant's website. In order to determine the carbohydrate content of Defendant's products, consumers must either contact Defendant's customer service department or perform the complicated and painstaking task of calculating the carbohydrate content by backing out the percentages of the disclosed nutritional information from the sum of ingredients. Because of the deceptive nature of Defendant's packaging, consumers would be forgiven for believing that Defendant's Blue Wilderness products contain little or no carbohydrate. But they would be wrong.

20. With respect to the disclosed ingredients, Defendant's packaging touts that they are formulated in a way that makes Defendant's dog food healthier than other dog foods. For example,

CLASS ACTION COMPLAINT

Defendant's Blue Wilderness packaging touts that its ingredients are present in the food in some kind of "unique," "precise," "optimal," or "healthy and holistic" way. The packaging also claims that Defendant's dry dog food is formulated to provide dogs with "superior nutrition" and "a healthy lifestyle."

21. Defendant also markets its high-carbohydrate dog food products through claims about the positive effects those products will have on the canine body, usually referencing specific physiological outcomes. For example, on its packaging for Blue Wilderness products, Defendant states that its dry dog food products will provide dogs, "Healthy Muscle Development," "Energy for an Active Life," "Strong Bones & Teeth," "Joint Health," "Healthy Skin & Coat," and a "Healthy Immune System."

22. Defendant also markets its high-carbohydrate dog food products through claims that its ingredients were chosen by experts in pet nutrition.

23. Just like with its consumer marketing, Defendant markets and promotes its high-carbohydrate dog food products to veterinarians through claims about the positive effects those products will have on the canine body, usually referencing specific physiological outcomes similar to those described above.

24. In one way or another, all of the marketing claims described above fail to reflect the scientifically-verified reality about the health effects that dietary carbohydrates have on the bodies of domestic dogs.

25. In reality, the scientific record clearly shows that domestic dogs did not begin consuming carbohydrates until at least 99% of their genetic evolution as a canine species was complete. Their wild ancestors lacked the ability to digest carbohydrates efficiently for hundreds of millions of years. And their close genetic cousins[1], wild grey wolves, still do not consume any carbohydrates. In other words, from the perspective of evolutionary biology, carbohydrates are not a very "natural" part of a canine diet.

---

[1] Grey wolves are the domestic dog's genetic ancestors. Indeed, the two species are so genetically similar that they are capable of interbreeding and shared a common ancestor as recently as 10,000 years ago.

CLASS ACTION COMPLAINT

26. Despite this fact, Defendant's Blue Wilderness™ dry dog food's packaging, which prominently displays a photograph of a grey wolf, touts it as being "Nature's Evolutionary Diet." The packaging further states that the food that was "[i]nspired by the diet of wolves, tireless hunters whose endurance is legendary, [and that] BLUE Wilderness is sure to satisfy your dog's inner carnivore."

27. Unlike the other macronutrients (fats and proteins) and all manner of micronutrients, dogs do not require any dietary carbohydrates whatsoever in their diets in order to avoid the development of diseases of deficiency and otherwise maintain good health. This fact is recognized both by the National Academies of Sciences, Engineering, and Medicine ("NASEM"), and the Association of American Feed Control Officials ("AAFCO"), the two most prominent and authoritative bodies to produce consensus statements concerning the nutritional requirements of dogs and cats.

28. Indeed, the majority of peer-reviewed scientific studies to have examined the issue have found that, calorie-for-calorie, dietary carbohydrates are more fattening for dogs than other macronutrients. These studies suggest that carbohydrates play an outsize role in causing obesity, a chronic disease with clearly established links to morbidity in dogs. Domestic dogs in the United States are currently experiencing an epidemic of obesity, with the disease thought to afflict at least 50% of American dogs.

29. The majority of peer-reviewed scientific studies to have examined the issue have also found that dietary carbohydrates induce unique metabolic and hormonal changes in dogs that other nutrients do not cause to any significant degree. Among other important changes, the consumption of carbohydrates causes circulating glucose levels to rise, which in turn causes the secretion of the anabolic hormone insulin. Among other metabolic changes, elevated insulin levels cause dogs to metabolize glucose to a greater degree (than other metabolic substrates such as free fatty acids) and to retain more glucose within the adipose tissue (i.e., "get fatter").

30. The majority of peer-reviewed scientific studies to have examined the issue have also found that renegade cancer cells preferentially metabolize glucose to fuel their furious growth

CLASS ACTION COMPLAINT

rates. Because consumption of dietary carbohydrates directly leads to elevated glucose levels, this fact has led numerous veterinary oncologists to employ carbohydrate restriction, among other dietary interventions, to help prevent and treat cancer in domestic dogs. Cancer is a chronic disease with clear links to morbidity in dogs. Just like with obesity, domestic dogs in the United States are currently experiencing an epidemic of cancer, with the disease thought to afflict at least 25% of American dogs.

31.  By contrast, as noted above, wild wolves consume little or no dietary carbohydrate. And despite their genetic similarity, unlike dogs, grey wolves do not experience high rates of chronic diseases such as obesity and cancer. In fact, these diseases are essentially non-existent in wolf populations.

32.  As the self-touted pet food company that "set a new standard in healthy pet food" and who worked alongside "a leading holistic veterinarian and animal nutritionist" to develop "the #1-selling natural pet food in America," Defendant knew or should have known that:

  a. the scientific record clearly demonstrates that domestic dogs did not consume significant quantities of carbohydrates until at least 99% of their evolution as a canine species was complete, and that modern-day grey wolves (the domestic dog's close genetic cousin) continue to avoid carbohydrates entirely;

  b. dogs do not require dietary carbohydrates in order to maintain good health, as recognized by the NASEM and the AAFCC, the two most prominent and authoritative bodies to produce consensus statements concerning the nutritional requirements of dogs and cats;

  c. dietary carbohydrates are not an essential nutrient for dogs nor are they otherwise required to maintain good health;

  d. the majority of peer-reviewed scientific studies show that dietary carbohydrates are more fattening for dogs than any other macronutrient; and

  e. the majority of peer-reviewed scientific studies show links between dietary carbohydrates, and metabolic irregularities, obesity, and cancer in dogs.

33. Plaintiff and other members of the Class reasonably and justifiably relied on Defendant's false, misleading, and fraudulent conduct when deciding to purchase Defendant's Blue Wilderness dog food products.

34. Plaintiff and members of the Class suffered injuries caused by Defendant because they would not have purchased the products or would have paid significantly less for the products, had they known that Defendant's conduct was false, deceptive and misleading.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of herself and all persons in the state of California, who within the relevant statute of limitations periods, purchased the Products (the "Class").

36. Excluded from the Class are Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest. Any judge and/or magistrate judge to whom this action is assigned and any members of such judges' staffs and immediate families are also excluded from the Class. Also excluded from the Class are persons or entities that purchased the Products for purposes of resale.

37. Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

38. Plaintiff is a member of the Class.

39. <u>Numerosity</u>: Defendant has sold tens of thousands of units of the Products. Defendant's Products are available for sale through third party retailers and vendors (including online), such as Petco, Petsmart, and Amazon. Accordingly, members of the Class are so numerous that their individual joinder herein is impractical. While the precise number of class members and their identities are unknown to Plaintiff at this time, the number may be determined through discovery.

40. <u>Common Questions Predominate</u>: Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual class members.

CLASS ACTION COMPLAINT

Common legal and factual questions include, but are not limited to, the following: whether Defendant's representations were false and misleading, and therefore violated various consumer protection statutes and common laws.

41.  <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class she seeks to represent in that Plaintiff and members of the Class were exposed to the same or substantially similar false and misleading advertising, purchased the Products relying on the false and misleading advertising, and suffered losses as a result of such purchases.

42.  <u>Adequacy</u>: Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of the members of the Class will be fairly and adequately protected by the Plaintiff and his counsel.

43.  <u>Superiority</u>:  A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Class.  The size of each claim is too small to pursue individually and each individual Class member will lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  The class action mechanism is designed to remedy harms like this one that are too small in value, although not insignificant, to file individual lawsuits for.

44.  This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds that are generally applicable to the class members, thereby making final injunctive relief appropriate with respect to all Class.

45.  This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to the members of the Class predominate over any questions that affect only individual members, and because the class action mechanism is

superior to other available methods for the fair and efficient adjudication of the controversy.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §§ 1750, *et seq*.**
(Injunctive Relief Only)

46. Plaintiff repeats the allegations contained above as if fully set forth herein.

47. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

48. The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of such Products by Plaintiff and members of the Class constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

49. Cal. Civ. Code § 1770(a)(2) prohibits "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services." By falsely and deceitfully labeling and advertising the Products, Defendant has misrepresented and continues to misrepresent both the source and the certification of goods, and thus have violated section 1770(a)(2) of the CLRA.

50. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By falsely and deceitfully labeling and advertising the Products, Defendant has represented and continues to represent that the Products have characteristics and benefits which they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

51. Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style of model, if they are another." By falsely and deceitfully labeling and advertising the Products, Defendant has represented and continues to represent that the Products are of a particular standard, quality, and/or grade when they are not. Therefore Defendant has violated section 1770(a)(7) of the CLRA.

52. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By falsely and deceitfully labeling and advertising the Products, and then not selling the Products to meet those advertised standards, Defendant has violated section 1770(a)(9) of

CLASS ACTION COMPLAINT

1 the CLRA.

2   53. At all relevant times, Defendant knew or reasonably should have known that the Products were not akin to that provided in the wild, but rather, high in carbohydrates not found in a wild diet.

  54. Plaintiff and members of the Class reasonably and justifiably relied on Defendant's false, misleading, and fraudulent conduct when purchasing the Products.  Moreover, based on the very materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and members of Class.

  55. Plaintiff and members of the Class suffered injuries caused by Defendant because they would not have purchased the Products or would have paid significantly less for the Products, had they known that Defendant's conduct was false, misleading, and fraudulent.

  56. Plaintiff and members of the Class seek only injunctive relief at this point, but will amend the complaint to seek damages after the time to response to the Cal. Civ. Code § 1782 demand letter has lapsed.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, *et seq.***

  57. Plaintiff repeats the allegations contained above as if fully set forth herein.

  58. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

  59. UCL §17200 provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

  60. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

  61. Defendant's false and misleading advertising of the Products therefore was and

continues to be "unlawful" because it violates the CLRA, California's False Advertising Law ("FAL"), and other applicable laws as described herein.

62. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff, and members of the Class.

63. Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

64. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is false, misleading, unfair, and unlawful. Creating customer confusion as to the health value of Defendant's Products is of no benefit to customers. Therefore, Defendant's conduct was "unfair."

65. As a result of Defendant's unfair business acts and practices, Defendant has and continue to unfairly obtain money from Plaintiff, and members of the Class.

66. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

67. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are healthier and/or more nutritious than they actually are. Plaintiff and members of the Class are not sophisticated experts on nutrition and food labeling, and therefore likely deferred heavily to Defendant's representations, believing that they were accurate. Because Defendant misled Plaintiff and other members of the Class, Defendant's conduct was "fraudulent."

68. As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff, and members of the Class.

69. Plaintiff requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiff, and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating

it in the same fashion in the future as discussed herein. Otherwise, Plaintiff, and members of the Class may be irreparably harmed or denied a complete remedy if such an order is not granted.

### THIRD CLAIM FOR RELIEF
### Violation of California's False Advertising Law ("FAL"), California Business & Professions Code §§ 17500, *et seq.*

70. Plaintiff repeats the allegations contained above as if fully set forth herein.

71. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

72. California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Business & Professions Code § 17500.

73. Defendant has disseminated to the public, including Plaintiff and members of both the Class, false and misleading statements concerning the nature of the Products. Because Defendant has disseminated false and misleading information regarding its Products, and Defendant knew or should have known, through the exercise of reasonable care, that these representations were false and misleading, Defendant violated the FAL.

74. Furthermore, Defendant knew or should have known through the exercise of reasonable care that such representations were unauthorized, inaccurate, and misleading.

75. As a result of Defendant's false advertising, Defendant has and continues to fraudulently obtain money from Plaintiff and members the Class.

76. Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and other members the Class may be irreparably harmed

CLASS ACTION COMPLAINT

1 and/or denied an effective and complete remedy if such an order is not granted.

CLASS ACTION COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class; and naming Plaintiff's attorneys as Class Counsel to represent the Class.

b) For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c) For an order finding in favor of Plaintiff, and the Class, on all counts asserted herein;

d) For an order awarding all damages, except under the California Consumers Legal Remedies Act (which seeks injunctive relief only at this point), on behalf of the members of the Class, in amounts to be determined by the Court and/or jury;

e) For prejudgment interest on all amounts awarded;

f) For interest on the amount of any and all economic losses, at the prevailing legal rate;

g) For an order of restitution and all other forms of equitable monetary relief;

h) For injunctive relief as pleaded or as the Court may deem proper;

i) For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses and costs of suit, including as provided by statute such as under California Code of Civil Procedure section 1021.5; and

j) For any other such relief as the Court deems just and proper.

CLASS ACTION COMPLAINT

# DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 27, 2019

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese (SBN 206773)
Carlos F. Ramirez (to be admitted *pro hac vice*)
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 646-0500
Facsimile: (212) 253-4272
E-mail: *mreese@reesellp.com*
   *cramirez@reesellp.com*

**REESE LLP**
George V. Granade (State Bar No. 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
E-mail: *ggranade@reesellp.com*

**RICE REUTHER SULLIVAN & CARROLL, LLP**
Anthony J. DiRaimondo (to be admitted *pro hac vice*)
3800 Howard Hughes Parkway, Suite 1200
Las Vegas, Nevada 89169
Telephone: (702) 732-9099
Facsimile: (702) 732-7110
E-mail: *adiraimondo@rrsc-law.com*

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT